J. P. BADENHAUSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8346. Promulgated August 1, 1927.

> The petitioner was accommodation endorser on four notes given by a corporation of which the petitioner was the principal stockholder. The corporation went into the hands of a receiver in 1919 and by 1921 it was evident that the corporation had no assets from which the notes could be paid. The petitioner had not paid the notes up to the close of 1921 and the record does not show that he ever paid them. *Held*, upon the record that the amount of the notes is not a legal deduction from the petitioner's gross income of 1921.

*William C. Alexander*, Esq., for the petitioner.
*M. N. Fisher*, Esq., for the respondent.

This is a proceeding for the redetermination of deficiencies in income tax for the years 1920 and 1921 in the respective amounts of $918.25 and $9,982.28. The proceeding relates to the deficiency for the year 1921 only. The question in issue is the right of the petitioner to deduct from gross income the amount of certain notes given by the Badenhausen Co., of which the petitioner was the principal stockholder, and upon which he was accommodation endorser.

### FINDINGS OF FACT.

The petitioner was formerly president and majority stockholder of Badenhausen Co., a Delaware corporation. In 1918 the Badenhausen Co. borrowed from the Manayunk National Bank, of Philadelphia, $48,000, evidenced by four notes, the first bearing date November 19, 1918, for $15,000, due 90 days after date; the second bearing date December 9, 1918, for $15,000, due March 9, 1919; the third bearing date December 23, 1918, for $11,000, due 90 days after date; and the fourth dated January 2, 1919, for $7,000, due April 2, 1919. All of these notes were endorsed by J. P. Badenhausen and the second one was also endorsed by Katherine C. Schneider, the petitioner's mother-in-law. None of these notes were secured by any collateral

except the second. This was secured by some collateral deposited by Katherine C. Schneider. None of the notes was paid at maturity and all were duly protested by Manayunk National Bank, the holder, and notices of protest duly given.

Application for appointment of a receiver for Badenhausen Co., the maker of the notes, was made in the United States District Court for the Eastern District of Pennsylvania, in the matter of *Andrew Wheeler* v. *Badenhausen Co.*, December Term, 1918, No. 1885, and a receiver was appointed by the court for the company on January 20, 1919. By the decree of the court the receiver was authorized to continue the business and did continue the business until the early part of 1922. At the time the receiver was appointed, the petitioner had contracts on hand amounting to approximately two and one-half millions or two and three-fourth million dollars. It was anticipated that the company would work out of its difficulties caused by lack of cash capital about the middle of 1920. The receiver determined that it would be impracticable to take on any more contracts. The petitioner then began to conduct the manufacture and installation of boilers as an individual. In such individual business he kept his books on the accrual basis and filed his tax returns in accordance with such books of account.

In the year 1921 the operation of the receivership, by reason of manufacturing difficulties and delays in completion, was very unprofitable, and by the end of 1921 it was evident that the creditors of the corporation would receive nothing on their claims. Nothing was ever paid to the creditors of the Badenhausen Co., nor even to the receiver's creditors. The petitioner was employed by the receiver and was familiar with the facts of the business conducted by the receivership. On August 2, 1920, the petitioner debited "contingent liability" on his books of account in the amount of $48,000 and credited "Manayunk National Reserve" with the same amount. The petitioner, his accountant, and manager had a conference with respect to these entries shortly before the close of the year 1921. As the result of this conference, profit and loss was debited with $48,000 and capital account was credited with a similar amount. This change in the petitioner's books of account was made in December, 1921.

The petitioner, in his capacity as accommodation endorser on the notes of the Badenhausen Co., did not pay the amount of said notes to the bank in 1921 or in any prior year.

### OPINION.

SMITH: It is the contention of the petitioner that by reason of the fact that he kept his books of account on the accrual basis and was accommodation endorser on notes of the Badenhausen Co., of

which he was president and majority stockholder, he sustained a loss in the year 1921 when the receivership of that company showed that its assets were wiped out and that no payment would be made on the notes by the receivership; that he, as endorser, was unqualifiedly liable thereon without any possibility of recoupment.

The Revenue Act of 1921 provides:

SEC. 214. (a) That in computing net income [of individuals] there shall be allowed as deductions:

\*          \*.          \*          \*          \*          \*          \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business;

\*          \*          \*          \*          \*          \*          \*

(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Considering first the question whether the petitioner was entitled to the deduction under section 214(a)(7) of the Revenue Act of 1921, it is clear that before a deduction can be taken for bad debts it is necessary that a debt be in existence. The relationship of debtor and creditor did not exist between the Badenhausen Co. and the petitioner and in the absence of this relationship it is impossible to establish the existence of a debt upon which the deduction could be predicated. Such relationship could arise only when and if the petitioner paid the amount of the notes in his capacity as accommodation endorser. *Elgin National Bank* v. *Frank Goecke*, 213 Ill. App. 559. In 8 Corpus Juris 270, par. 423, the law is stated as follows:

Where the accommodation party has been compelled to pay the instrument, the party accommodated becomes, in consequence of the implied contract of indemnity, a debtor to the accommodation party, and the latter has a right of action against the former. *Such right accrues, however, only after payment by him, and not on mere recovery of judgment against him.* (Italics ours.)

The notes here in question were not paid in 1921 or prior years and it does not appear from the record that they have ever been paid by the petitioner.

Counsel for the petitioner has argued that the liability on the notes was absolute and not contingent. The question is not, however, as to whether the liability of the petitioner to the holder of the notes was contingent or absolute, but is whether there was a debt owing to the petitioner which was ascertained to be worthless and was charged off during the taxable year. If there was not a debt having existence in fact then the petitioner is not entitled to the deduction under

subdivision (7) of the statute above quoted merely because he shows that the debt would have been worthless had it in fact existed. *Luke & Fleming, Inc.*, 1 B. T. A. 12; *Farmers' Hardware Co.*, 2 B. T. A. 90; *Louis Titus*, 2 B. T. A. 754; *Federal Fuel Co.*, 3 B. T. A. 814. As was stated in the *Luke & Fleming, Inc.*, supra:

To entitle a taxpayer to deduct from gross income, as a bad debt, an item ascertained to be worthless and charged off in a given year, such a debt must have had an existence in fact. A debt which never existed can not be charged off. The right to a deduction arises from the discovery that something which had value has ceased to have it; a debt which never existed had no value to lose.

The evidence is not satisfactory that the petitioner sustained any loss in 1921 as a result of his endorsement of the notes. The most that the evidence shows is that the petitioner had a contingent liability in respect of them on December 31, 1921. The direct examination brought out nothing with reference to the payment of the notes and when counsel for the respondent attempted to cross-examine witnesses with respect to the situation which existed with respect to the notes after 1921 counsel for the petitioner stated:

I have objection, however, to any inquiry directed to years subsequent to 1921, because we are dealing with the situation as it stood at the end of 1921, the same as judging all these situations reasonable business foresight and not from hindsight, and therefore I can't see the slightest effect as to whether this note was paid in 1922 and 1923, or 1926 or 1927, or never paid. It may affect Mr. Badenhausen's personal tax situation. It might affect the future years in which payments partially or totally were made.

The statute permits the deduction from gross income of losses " sustained." It does not permit the deduction of losses which may be sustained. The evidence of record does not show that the petitioner has ever sustained any loss in respect of his endorsement upon the notes.

*Judgment will be entered for the respondent.*

Considered by Littleton and Love.